UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| CLARENCE THOMAS,<br><br>       Plaintiff,<br>v.<br><br>JENNIFER MCDERMOTT and<br>JOHN/JANE DOES 1-80,<br><br>       Defendants. | Case No. 23-CV-734-JPS<br><br><br>**ORDER** |

  Plaintiff Clarence Thomas, an inmate confined at Kettle Moraine Correctional Institution ("KMCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee, motion to pay the full filling fee from his release account, and screens his complaint.

**1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE AND MOTION TO PAY THE FILING FEE FROM RELEASE ACCOUNT**

  The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

  On July 28, 2023, the Court ordered Plaintiff to pay an initial partial filing fee of $53.97. ECF No. 7. Plaintiff paid that fee on August 18, 2023.

The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

As to Plaintiff's motion to pay the entire filing fee from his release account, ECF No. 8, the Court will deny the motion. While the Court likely would have allowed Plaintiff to pay the initial partial filing fee from his release account in order in order to proceed with his case, the Court cannot allow Plaintiff to pay the entire filing fee from his release account. This Court lacks the authority—statutory or otherwise—to order that a prisoner may tap into his release account to pay current (or future) litigation costs. *Cf. Wilson v. Anderson*, No. 14-CV-0798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (declining to order that a prisoner's full filing fee be paid from his release account, "[g]iven the [DOC's] rationale for segregating funds into a release account" and the absence of any statutory authority compelling the court to do so).

Permitting a prisoner to invade a release account for litigation costs could harm that prisoner's likelihood of success post-incarceration, *see* Wis. Admin. Code § DOC 309.466 (stating that disbursements from a prisoner's release account are authorized "for purposes that will aid the inmate's reintegration into the community"), especially if the prisoner is particularly litigious. As the Seventh Circuit has instructed, "like any other civil litigant, [a prisoner] must decide which of [his] legal actions is important enough to fund," *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003); thus, if a prisoner concludes that "the limitations on his funds prevent him from prosecuting [a] case with the full vigor he wishes to prosecute it, he is free to choose to dismiss it voluntarily and bring it at a later date." *Williams v. Berge*, No. 02-CV-10, 2002 WL 32350026, at *8 (W.D. Wis. Apr. 30, 2002).

Plaintiff has already paid the initial partial filing fee and the Court's denial to pay the entire filing fee will not impede Plaintiff's ability to proceed in this case. As such, the Court denies Plaintiff's motion to pay the full filing fee from his release account.

**2.      SCREENING THE COMPLAINT**

   **2.1      Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or

the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff names Jennifer McDermott, Warden of KMCI during the relevant time period, as a defendant. ECF No. 1 at 2. Plaintiff also names various Doe defendants as follows: (1) Does 1-20 were the individuals responsible for creating COVID-19 policies and procedures that were in place at KMCI on September 3, 2020; (2) Does 21-40 were individuals responsible for overseeing the amendment/enforcement of the COVID-19 policies and procedures that were in place at KMCI on September 3, 2020; (3) Does 41-60 were the medical professionals responsible for overseeing the quarantine/isolation process of the inmates who wither tested positive for COVID-19 or the inmates that were in close contact with someone who had tested positive for COVID-19 at KMCI on September 3, 2020; and (4) Does 61-80 were the individuals responsible for overseeing the inmate quarantine/isolation process during the COVID-19 outbreak at KMCI on September 3, 2020. *Id.*

Plaintiff alleges that in March 2020, CDC guidelines instructed prison officials to immediately quarantine close contacts of a known or suspected case of COVID-19. *Id.* On the first and second day of September 2020, Defendants compelled all the KMCI inmates to submit to COVID-19 testing. *Id.* at 3. Prior to the mass testing, several inmates assigned to

Housing Unit-11 had developed symptoms similar to patients with COVID-19. *Id.* On September 3, 2020, six inmates in Unit 11 had positive test results for COVID-19. *Id.* These six inmates were placed in quarantine status in the segregation unit. *Id.* With the exception of a few modifications to the KMCI day-to-day movement, Defendants still continued normal operations within the institution. *Id.* Quarantine was never required for the roommates of the six inmates confirmed to have tested positive for COVID-19. *Id.* As a result, the six roommates of the COVID-19 positive inmates were permitted to use the same accommodations (restrooms, showers, microwave, recreation, school, etc.) as the other inmates assigned to Unit 11. *Id.*

On September 4, 2020, other inmates in Unit 11 began to also complain about experiencing COVID-19 symptoms. *Id.* These inmates were merely instructed by Defendants to remain in their cells with the exception of the use of phones, showers, and restroom. *Id.* at 4. All inmates in Unit 11 relied on the same accommodations for food, trays, utensils, showers, and restrooms. *Id.* Plaintiff was assigned to Unit 11 throughout the duration of these events. *Id.*

On September 13, 2020, Defendants again compelled all inmates to submit to COVID-19 testing. *Id.* Shortly after this screening, Plaintiff began to experience severe headaches, an upset stomach, loss of taste and smell, fatigue, coughing, and hot/cold sweats. *Id.* Prior to the testing, there were inmates throughout KMCI who complained about suffering from COVID-19 symptoms. *Id.* Again, Defendants merely instructed these inmates to remain in their cells with the exception of phones, showers, and restroom use. *Id.* KMCI had a policy of not quarantining the cellmates of inmates confirmed to have COVID-19 or other inmates who had close contact with infected inmates. *Id.*

On September 16, 2020, medical staff informed Plaintiff that he had tested positive for COVID-19. Due to the large number of confirmed COVID-19 cases, Defendants placed certain units within the institution on lock down. *Id.* at 5. Several weeks later, additional testing was performed and KMCI had over eight hundred confirmed cases of COVID-19. *Id.* KMCI was then placed on complete lockdown, meaning no non-essential movement. *Id.* On October 26, 2020, Fox 6 News journalist, Aaron Maybin, reported a story based on information from Defendants, purporting that all COVID-19 positive inmates or their close contact were always quarantined. *Id.*

### 2.3 Analysis

Plaintiff's allegations about his exposure to and eventual contraction of COVID-19 implicate his rights under the Eighth Amendment. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To demonstrate a violation of the Eighth Amendment, a prisoner must make two showings. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* at 834 (quotations omitted). "For a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The second requirement is that the prison official was deliberately indifferent "to inmate health or safety," *id.*, meaning that he was both aware of and disregarded "an excessive risk to inmate health or safety," *id.* at 837.

Courts have held that the risk of exposure to COVID-19 in prison satisfies the objective standard of an Eighth Amendment claim. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (recognizing that "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death"); *see also Ducksworth v. Utter*, No. 21-cv-97-PP, 2022 WL 3647884, at *4 (E.D. Wis. Aug. 24, 2022); *Stewart v. Haese*, No. 20-cv-1494-NJ, 2022 WL 1750523, at *2-3 (E.D. Wis. 2022). Thus, the relevant question in determining if Plaintiff states a claim is whether the defendants' actions demonstrated deliberate indifference to that risk of harm. The key inquiry is not whether the defendants perfectly responded or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." *See Wilson*, 961 F.3d at 840-41 (quoting *Farmer*, 511 U.S. at 844).

Here, the Court finds that Plaintiff fails to state a claim upon which relief may be granted. The complaint establishes that KMCI was taking steps to protect inmates from COVID-19: inmates identified as positive for COVID-19 were quarantined and those suffering COVID-19 symptoms were instructed to remain in their cells except for limited exceptions. "That a response did not avert the risk does not mean it was unreasonable, and the standard is always reasonableness in light of the surrounding circumstances." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018); *see also Money v. Pritzker*, 453 F. Supp. 3d 1103, 1131-32 (N.D. Ill. 2020) (denying inmates' preliminary injunction motion because defendants listed steps they were taking in response to COVID-19 and "[t]he record simply does not support any suggestion that Defendants have turned the kind of blind eye and deaf ear to a known problem that would indicate total unconcern for the inmates' welfare" (quotation marks omitted)); *Coates v. Arndt*, No.

20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020) ("The plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. This does not mean that the correctional officers in charge of those prisons are subjecting inmates to cruel and unusual punishment. People, both inside and outside prisons and jails, are contacting COVID-19 ...."). Plaintiff alleges that Defendants failed to quarantine prisoners who had close contacts with individuals who had COVID-19 or were suspected to have it. However, while Plaintiff and these prisoners were all on Unit 11, Plaintiff does not allege that he came into contact with them or that he contacted any of the defendants regarding these prisoners and their COVID-19 status. As alleged, Defendants' failure to quarantine these prisoners did not impact Plaintiff. plaintiff. *See Williams v. McDermott*, No. 22-C-1003, 2022 WL 17961667, at *4 (E.D. Wis. Dec. 27, 2022).

Additionally, Plaintiff cannot proceed against Warden McDermott. There is no specific allegation that the Warden personally participated in the alleged actions. *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."); *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under § 1983 ... requires personal involvement in the alleged constitutional deprivation."). While Plaintiff alleges generally that KMCI was aware of COIVD-19 guidelines, he does not state specifically how or when the Warden was made aware. And, even if he had, "inaction following receipt of a complaint about someone else's conduct is [insufficient]" to allege personal involvement. *Estate of Miller ex rel. Chassie v. Marberry*, 847 F.3d

Page 8 of 12
Case 2:23-cv-00734-JPS    Filed 10/04/23    Page 8 of 12    Document 9

425, 428 (7th Cir. 2017). Plaintiff seeks damages based on KMCI's overall response to COVID-19, including their responses to other prisoners, but he has not alleged that he contacted any prison official regarding his concerns. As such, the Court finds that Plaintiff's complaint fails to state a claim upon which relief may be granted.

The Court will provide Plaintiff an opportunity to file an amended complaint on or before **October 25, 2023.** When writing his amended complaint, Plaintiff should provide the Court with enough facts to answer the following questions: (1) Who violated his constitutional rights?; (2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? Plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each Defendant with notice of what each Defendant allegedly did or did not do to violate his rights.

The Court is enclosing a copy of its complaint form and instructions. Plaintiff must list all of the defendants in the caption of his amended complaint. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, Plaintiff may use up to five additional sheets of paper.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th

Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If the amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915A.

3.  **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to pay the full filing fee from his release account, ECF No. 8, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the complaint fails to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint that complies with the instructions in this Order on or before **October 25, 2023**. If Plaintiff files an amended complaint by the deadline, the Court will screen the amended complaint under 28 U.S.C. § 1915A. If Plaintiff does not file an amended complaint by the deadline, the Court will dismiss this case based on his failure to state a claim in his original complaint and will issue him a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $296.03 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust

Page 10 of 12
Case 2:23-cv-00734-JPS    Filed 10/04/23    Page 10 of 12    Document 9

account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution; and

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined.

Dated at Milwaukee, Wisconsin, this 4th day of October, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.