# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CLARENCE THOMAS,

                         Plaintiff,

v.                                                          Case No. 23-CV-734-JPS

JENNIFER MCDERMOTT and
JOHN/JANE DOES 1-60,                          **ORDER**

                         Defendants.

Plaintiff Clarence Thomas, an inmate confined at Racine Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. ECF No. 1. On October 4, 2023, the Court screened Plaintiff's complaint, found that if failed to state a claim, and allowed Plaintiff to file an amended complaint. ECF No. 9. On November 29, 2023, the Court granted Plaintiff a second extension of time to file an amended complaint. ECF No. 13. On December 28, 2023, Plaintiff filed an amended complaint. ECF No. 14. This Order screens Plaintiff's amended complaint.

## 1.    FEDERAL SCREENING STANDARD

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 2. PLAINTIFF'S ALLEGATIONS

Plaintiff names Jennifer McDermott, Warden of Kettle Moraine Correctional Institution ("KMCI") during the relevant time period and where Plaintiff was confined, as a defendant. ECF No. 14 at 2. Plaintiff also names various Doe defendants as follows: (1) Does 1-20 were the individuals responsible for creating COVID-19 policies and procedures that

were in place at KMCI on September 3, 2020; (2) Does 21-40 were individuals responsible for overseeing the amendment/enforcement of the COVID-19 policies and procedures that were in place at KMCI on September 3, 2020; and (3) Does 41-60 were the medical professionals responsible for overseeing the quarantine/isolation process of the inmates who either tested positive for COVID-19 or the inmates that were in close contact with someone who had tested positive for COVID-19 at KMCI on September 3, 2020. *Id.*

Plaintiff alleges that in March 2020, CDC guidelines instructed prison officials to immediately quarantine close contacts of a known or suspected case of COVID-19. *Id.* On the first and second day of September 2020, Defendants compelled all the KMCI inmates to submit to COVID-19 testing. *Id.* at 3. Prior to the mass testing, several inmates assigned to Housing Unit-11 had developed symptoms similar to patients with COVID-19. *Id.* On September 3, 2020, six inmates in Unit 11 had positive test results for COVID-19. *Id.* These six inmates were placed in quarantine status in the segregation unit. *Id.* With the exception of a few modifications to the KMCI day-to-day movement, Defendants still continued normal operations within the institution. *Id.* Quarantine was never required for the roommates of the six inmates confirmed to have tested positive for COVID-19. *Id.* As a result, the six roommates of the COVID-19 positive inmates were permitted to use the same accommodations (restrooms, showers, microwave, recreation, school, etc.) as the other inmates assigned to Unit 11. *Id.*

On September 4, 2020, other inmates in Unit 11 began to also complain about experiencing COVID-19 symptoms. *Id.* These inmates were merely instructed by Defendants to remain in their cells with the exception of the use of phones, showers, and restroom. *Id.* All inmates in Unit 11 relied

on the same accommodations for food, trays, utensils, showers, and restrooms. *Id.* On September 4, 2020, inmate Roger Evans ("Evans) informed KMCI staff that he was suffering from COVID-19 symptoms. *Id.* at 4. Plaintiff was assigned to cell located directly across the hall from Evans throughout the duration of these events. *Id.* During Plaintiff's daily interactions with Evans, he was unaware of Evans's complaints regarding his COVID-19 symptoms. *Id.*

On September 13, 2020, Defendants again compelled all inmates to submit to COVID-19 testing. *Id.* Shortly after this screening, Plaintiff began to experience severe headaches, an upset stomach, loss of taste and smell, fatigue, coughing, and hot/cold sweats. *Id.* Prior to the testing, there were inmates throughout KMCI who complained about suffering from COVID-19 symptoms. *Id.* Again, Defendants merely instructed these inmates to remain in their cells with the exception of phones, showers, and restroom use. *Id.* KMCI had a policy of not quarantining the cellmates of inmates confirmed to have COVID-19 or other inmates who had close contact with infected inmates. *Id.* at 5. On September 16, 2020, medical staff informed Plaintiff that he had tested positive for COVID-19. *Id.*

3.    ANALYSIS

Plaintiff's allegations about his exposure to and eventual contraction of COVID-19 implicate his rights under the Eighth Amendment. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To demonstrate a violation of the Eighth

Amendment, a prisoner must make two showings. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* at 834 (quotations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The second requirement is that the prison official was deliberately indifferent "to inmate health or safety," *id.*, meaning that he was both aware of and disregarded "an excessive risk to inmate health or safety," *id.* at 837.

Courts have held that the risk of exposure to COVID-19 in prison satisfies the objective standard of an Eighth Amendment claim. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (recognizing that "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death"); *see also Ducksworth v. Utter*, No. 21-cv-97-PP, 2022 WL 3647884, at *4 (E.D. Wis. Aug. 24, 2022); *Stewart v. Haese*, No. 20-cv-1494-NJ, 2022 WL 1750523, at *2-3 (E.D. Wis. 2022). Thus, the relevant question in determining if Plaintiff states a claim is whether Defendants' actions demonstrated deliberate indifference to that risk of harm. The key inquiry is not whether Defendants perfectly responded or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." *See Wilson*, 961 F.3d at 840-41 (quoting *Farmer*, 511 U.S. at 844).

Here, the Court begins its analysis by noting that other courts in this district have screened similar or nearly identical complaints from "persons who were incarcerated at KMCI in September 2020 and who alleged that the prison took inadequate steps to prevent them from contracting COVID-19." *See Earl v. McDermott*, No. 23-CV-1017-PP, 2024 WL 1012920, at *4–6 (E.D. Wis. Mar. 8, 2024) (citing *Williams v. McDermott*, Case No. 22-C-1003,

2022 WL 17961667, at *2 (E.D. Wis. Dec. 27, 2022); *Martinez v. McDermott*, No. 23-CV-1209-BHL, 2023 WL 6976742, at *2–3 (E.D. Wis. Oct. 23, 2023). None have survived screening. *See id.* Plaintiff has amended his complaint based on the Court's guidance in the prior screening order to include specific allegations that he interacted with another inmate, Evans, who officials knew had complained of COVID-19 symptoms on September 4, 2020. As a result of this interaction, Plaintiff alleges that he subsequently contracted COVID-19.

Despite Plaintiff's additional factual allegations, the Court still finds that Plaintiff fails to state an Eighth Amendment claim upon which relief may be granted. The complaint establishes that KMCI was taking steps to protect inmates from COVID-19: inmates identified as positive for COVID-19 were quarantined and those suffering COVID-19 symptoms were instructed to remain in their cells except for limited exceptions. "That a response did not avert the risk does not mean it was unreasonable, and the standard is always reasonableness in light of the surrounding circumstances." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018); *see also Money v. Pritzker*, 453 F. Supp. 3d 1103, 1131–32 (N.D. Ill. 2020) (denying inmates' preliminary injunction motion because defendants listed steps they were taking in response to COVID-19 and "[t]he record simply does not support any suggestion that Defendants have turned the kind of blind eye and deaf ear to a known problem that would indicate total unconcern for the inmates' welfare" (quotation marks omitted)); *Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020) ("The plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. This does not mean that the correctional officers in charge of those prisons are

subjecting inmates to cruel and unusual punishment. People, both inside and outside prisons and jails, are contacting COVID-19 ....").

Plaintiff alleges that Defendants failed to quarantine prisoners who had close contacts with individuals who had COVID-19 or who experienced COVID-19 symptoms, and that this action violated his constitutional rights. While Defendants' actions certainly may have not been the ideal method to manage the COVID-19 pandemic, and perhaps may have even been negligent, the Court does not find that the alleged actions rise to the level of deliberate indifference. *See Wilson,* 961 F.3d at 843 (Prison officials "will likely not be found to be deliberately indifferent if they took some action [to curb COVID-19], even if that action was inadequate."). Although the KMCI officials potentially could have done more in this situation to protect Plaintiff, such as quarantine all inmates with any COVID-19 symptoms, the constitution does not require that prison officials take every step possible to mitigate harm. When considering the prison setting, the competing security interests, and the many practices KMCI had in place in place to prevent the spread of COVID-19, the Court does not find that Defendants' alleged actions rose to the level of deliberate indifference. The Court accordingly finds that Plaintiff's complaint fails to state an Eighth Amendment claim upon which relief may be granted.

4.    **CONCLUSION**

In sum, the Court finds that the amended complaint fails to state a federal claim upon which relief may be granted. Plaintiff was already provided the opportunity to amend his complaint based on the Court's guidance in the prior screening order. As such, the Court therefore finds that further amendment would be futile. *See Runnion ex rel. Runnion v Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

Although Plaintiff makes clear that he wishes to pursue a negligence claim against Defendants, in the absence of a federal claim, the Court cannot exercise supplemental jurisdiction over a state-law claim. *See* 28 U.S.C. § 1367(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). The Court therefore will dismiss Plaintiff's negligence claim without prejudice for lack of jurisdiction, dismiss the Eighth Amendment claim with prejudice for failure to state a claim, and dismiss this action. Although this Court lacks subject matter jurisdiction, Plaintiff may choose to pursue his state law claim in state court if he so chooses.

Accordingly,

**IT IS ORDERED** that Plaintiff's Eighth Amendment claim be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's negligence claim be and the same is hereby **DISMSSED without prejudice**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of April, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under limited circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.